IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PARSONS, BRINCKERHOFF, QUADE & DOUGLAS, INC. | * | |
| | * | |
| Petitioner, | * | Civil Action No.: RDB-09-633 |
| v. | * | |
| PALMETTO BRIDGE CONSTRUCTORS, | * | |
| Respondent. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

After the completion of a six-month long arbitration proceeding regarding a disputed contract between Petitioner Parsons Brinckerhoff Quade & Douglas, Inc. ("Parsons" or "Petitioner") and Respondent Palmetto Bridge Constructors ("Palmetto" or "Respondent"), the parties have brought the litigation to this Court.  Parsons filed its complaint in this case, styled as a Petition and Motion for Order Confirming the Award, seeking to have the arbitration award confirmed pursuant to 9 U.S.C. § 9 (stating that "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title").  Palmetto then filed a counterclaim, seeking a declaratory judgment that it had no obligation to pay costs and attorneys' fees to Parsons pursuant to a fee-shifting contract provision.

In addition to the Petition and Motion for Order Confirming the Award, there are four pending motions, all of which were addressed at the motions hearing conducted on July 8, 2009. Two of the four motions—Palmetto's Motion to Modify or Correct Arbitration Award (Paper

No. 7) and Parsons's Motion to Vacate and Remand to Arbitration Panel (Paper No. 13)—seek to have the arbitral award modified in various ways.  Because this Court concludes that both motions are time-barred, they will both be DENIED.  As such, Parsons's Petition and Motion for Order Confirming the Award (Paper No. 1) will be GRANTED, and the December 1, 2008 arbitral award, as amended on January 19, 2009, will remain intact.

The other two motions—Palmetto's Motion for Summary Judgment (Paper No. 30) and Parsons's Cross Motion for Summary Judgment (Paper No. 32)—pertain to whether or not the final arbitral award triggered a fee-shifting agreement entered into between the parties.  For the reasons stated below, the fee-shifting provision was not triggered.  Consequently, Palmetto's Motion for Summary Judgment (Paper No. 30) will be GRANTED, and Parsons's Motion for Summary Judgment (Paper No. 32) will be DENIED.

## BACKGROUND

Respondent Palmetto is a joint venture between Skanska Civil USA, Inc. and HBG Constructors, two companies that are experienced constructors of major infrastructure projects.  Palmetto entered into a subcontracting agreement with Parsons relating to the design and engineering of the Cooper River Bridge in Charleston, South Carolina.  The underlying arbitration involved Palmetto's allegations of professional negligence against Parsons relating to the timely and acceptable design for the Cooper River Bridge.[1]

The subcontract agreement between the parties contained a mandatory arbitration

---

[1] Although the subcontracting agreement was entered into by Parsons and Palmetto, Skanska Civil USA performed the project through its wholly-owned subsidiary, Tidewater Skanska, Inc. of Norfolk, Virginia and HBG Constructors performed its responsibilities in the joint venture through its wholly owned subsidiary, Flatiron Constructors, Inc.  (Resp.'s Counterclaim ¶ 2.)

provision.  (*See* Pet.'s Petition Ex. A., Section 13.)  On February 14, 2005, Palmetto filed a demand for Arbitration with the American Arbitration Association, alleging approximately fifty discrete acts of negligence.  The demand was later amended on July 15, 2005 to include a request for $70,000,000 in damages (an amount later reduced to somewhere in the $50 million dollar range).  On November 2, 2005, Parsons filed a counterclaim against the Palmetto alleging, among other things, that Palmetto owed Parsons for additional services performed.

On November 1, 2006, Parsons and Palmetto entered into an Early Neutral Evaluation Agreement ("ENE Agreement"), pursuant to which the parties agreed to engage a "Neutral Evaluator" to produce an initial and a final evaluation setting forth the relative strength of the parties' claims, including the amount, if any, that the neutral evaluator would award each party if tasked as the arbitrator on the dispute.  The precise terms of this agreement, as well as the details of the proceedings, are contained in this Court's discussion of the parties' cross motions for summary judgment.

From January 16, 2008 through July 15, 2008, the parties litigated their claims before a panel of arbitrators—namely, Roger Peters, J. Snowden Stanley, and John Wolf—in Baltimore, Md.[2]  On December 1, 2008, the arbitration panel issued its 181-page decision, titled as a "Final

---

[2] Parsons is a New York corporation with a principal place of business in New York, New York.  Palmetto is a joint venture between Tidewater Skanska, Inc. and Flatiron Constructors, Inc., "[a]nd, for diversity purposes, a joint venture should be treated as a partnership."  *B. L. Schrader, Inc. v. Anderson Lumber Co.*, 257 F. Supp. 794, 796 (D. Md. 1966).  Tidewater Skanska, Inc. is a Virginia company with its principal place of business in Virginia Beach, Virginia, and Flatiron Constructors, Inc. is a Delaware company with its principal place of business in Longmont, Colorado.  Therefore, because complete diversity exists between the parties, and because the monetary dispute between them is greater than $75,000, this Court has jurisdiction to hear the case.

Venue is appropriate in this Court because, under the Federal Arbitration Act, an

3

Award." The arbitration panel awarded $1,275,728.25 to Palmetto and $36,160.00 to Parsons. After offsetting these amounts, the net award to Palmetto was $1,239,568.25. Parsons was also required to reimburse Palmetto in the amount of $6,625.07 for fees and expenses, and the parties split $35,750 in administrative filing fees and $890,049.81 in fees and expenses of the arbitrators. On January 19, 2009, the arbitration panel corrected one computational error in the award, but declined to address the remaining requests because it determined that it lacked jurisdiction to resolve them.

On March 12, 2009, Parsons filed its Petition and Motion for Order Confirming the Award (Paper No. 1). Palmetto filed a Motion to Modify or Correct Arbitration Award (Paper No. 7) on April 7, 2009, and Parsons filed a Motion to Vacate and Remand to Arbitration Panel (Paper No. 13) on April 15, 2009. Parsons then filed its Motion for Summary Judgment (Paper No. 30) on June 10, 2009, and Palmetto filed its Cross Motion for Summary Judgment (Paper No. 32) on June 26, 2009. This Court conducted a hearing on these motions on July 8, 2009.

## DISCUSSION

**I.      Motions to Modify the Arbitral Award**

Palmetto's Motion to Modify or Correct Arbitration Award (Paper No. 7) requests that this Court vacate the $36,160 awarded by the arbitration panel to Parsons. Palmetto contends that, prior to the arbitration hearing, the parties agreed that certain work performed by Parsons pursuant to Supplemental Agreement 27 ("SA 27") would not be subject to the arbitration

---

application to have an arbitral award confirmed "may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. The arbitration was conducted and the award made in Baltimore, Md.

4

panel's authority, and that Palmetto actually paid Parsons $36,160 for the work outside of the arbitration process. Despite the agreement, and despite the actual payment of the money due, the arbitration panel awarded Parsons $36,160 for work performed pursuant to SA 27. This part of the arbitral award, Palmetto submits, was in error and must be vacated.

Although Parsons contends in the alternative that the arbitration panel did not err in awarding it $36,160 for work performed pursuant to SA 27, it argues first and foremost that this Court cannot vacate any part of the award because the limitations period to raise such a claim lapsed. Parsons fully acknowledges that, if this Court finds that Palmetto's Motion to Modify or Correct Arbitration Award is untimely, its own Motion to Vacate and Remand to Arbitration Panel (Paper No. 13) is also untimely. Nonetheless, Parsons argues in its Motion to Vacate and Remand to Arbitration Panel that, if the limitations period has not lapsed, the arbitration panel erred by reaching conflicting results with respect to two claims by Palmetto involving lateral bearings, and that arbitration panel awarded profit to Palmetto in manifest disregard of the contract between the parties.

The parties are in agreement that the three-month limitations period contained in the Federal Arbitration Act is applicable. *See* 9 U.S.C. § 12 ("Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."). The dispute between the parties is when the three-month window was triggered, which requires a closer inspection of the statutory language providing that such a motion must be served within three months of the date "the award is filed or delivered." *Id.*

The relevant dates in addressing the limitations period are as follows:

5

- On December 1, 2008, the arbitration panel issued its 181-page "Final Award."

- On December 15, 2008, Parsons timely moved to modify the award pursuant to the American Arbitration Association ("AAA") Construction Industry Arbitration Rules.[3]

- On January 19, 2009, the arbitration panel corrected a computational error in a nine-page document titled "Order in Response to Requests for Modification of Final Award and Amendment of Final Award by Interlineation." The arbitration panel declined to modify the Final Order further because, as Palmetto has argued, the arbitration panel only had jurisdiction to correct computational errors. *See* AAA CSIR R-4 ("The arbitrator is not empowered to redetermine the merits of any claim already decided."). Thus, the arbitration panel left intact its decision to award Parsons $36,160 for work performed pursuant to SA 27.

- On April 7, 2009, Palmetto filed its Motion to Modify or Correct Arbitration Award (Paper No. 7), and on April 15, 2009, Parsons filed its Motion to Vacate and Remand to Arbitration Panel (Paper No. 13).

Parsons argues that the three-month limitations period began to run on December 1, 2008, the date of the "Final Award," and consequently the motions filed in April 2009 were untimely. Palmetto argues, however, that the three-month limitations period began to run on January 19, 2009, the date of the "Order in Response to Requests for Modification of Final Award and Amendment of Final Award by Interlineation," and consequently the motions filed in April 2009 were timely.

---

[3] Rule 47 of the AAA Construction Industry Arbitration Rules, titled "Modification of Award," states in relevant part as follows:

> Within twenty calendar days after the transmittal of an award, the arbitrator on his or her initiative, or any party, upon notice to the other parties, may request that the arbitrator correct any clerical, typographical, technical or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided.

AAA CSIR R-47.

6

There is no direct Supreme Court or Fourth Circuit authority on this issue, and parties have acknowledged that this issue is one of first impression in this Court. Nonetheless, the limited case law on this issue heavily favors finding that the three-month window was triggered by the "Final Award" issued on December 1, 2008.

In *Tokura Construction Co., LTD v. Corp. Raymond, S.A.*, 533 F.Supp 1274 (S.D. Tex. 1982), the United States District Court for the Southern District of Texas found that the defendant's objections to the arbitral award, which were filed on July 27, 1981, were untimely because the three-month limitations period in 9 U.S.C. § 12 began to run on February 4, 1981. The court cited four reasons for its decision: (1) on February 4, 1981, the arbitration panel issued an award that "recited that it was made in full settlement of all claims submitted and asserted by [the plaintiff] and three claims submitted by [the defendant]"; (2) the arbitral "award [did] not state its terms were conditioned on some future resolution of [the defendant's] remaining claims; rather, it speaks in terms of immediacy and prompt performance"; (3) the additional claims raised by the defendant were assigned a new American Arbitration Association case number; and (4) the arbitration panel indicated in a subsequent letter that they considered the February 4, 1981 award "final as rendered." *Id.* at 1277. Thus, the court rejected defendant's claim that the three-month limitations period was triggered on June 3, 1981.[4]

The United States Court of Appeals for the First Circuit, in *Fradella v. Petricca*, 183 F.3d 17 (1st Cir. 1999), discussed when an arbitral decision can be characterized as final. In that case, the arbitration panel issued an arbitral award on December 18, 1997, citing New York state

---

[4] The court's opinion does not explain the significance of June 3, 1981, but it is presumably the date in which the defendant's remaining claims were resolved.

law as providing the legal authority to render its decision. *Id.* at 18. Upon a request by plaintiff's counsel, the arbitration panel revised the signature page on February 23, 1998 to indicate that Massachusetts law, not New York law, provided the necessary legal authority. *Id.* The arbitration panel did not, however, change the original date. *Id.* On March 25, 1998, plaintiff moved to vacate the arbitral award in federal district court. *Id.* The First Circuit upheld the district court's entry of summary judgment for the defendant on the grounds that the motion to vacate was untimely. *Id.* After noting that there are "somewhat different standards govern the finality of judgments and arbitral awards," the court determined that "an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration, even though the arbitrators purport to retain jurisdiction in the event the need arises to resolve some subsidiary matter, such as damages or backpay calculations." *Id.* at 19. Under this standard, the court held that the initial arbitral award issued on December 18, 1997 "unquestionably" evidenced the arbitrators' intention to resolve all claims, and that the later adjustment from New York to Massachusetts law "in no sense constituted an arbitrable 'claim,' as distinguished from a subsidiary determination regarding the legal regimen under which the securities 'claim' was to be decided."[5] *Id. See also Olson v. Wexford Clearing Servs.*

---

[5] The court explained as follows:

> That is to say, if the limitations period prescribed in FAA § 12 were subject to suspension simply because an arbitral award contained error, even though the arbitrators had intended to resolve all submitted "claims," an unsuccessful party could *preclude the commencement*—or *suspend* the running—of the limitations period simply by alleging subsidiary errors in their FAA § 10 motions to vacate an adverse arbitral award. Thus, the contention that mere error—whether ministerial, procedural or substantive—renders an arbitral award non-"final" is fatally flawed.

*Corp.*, 397 F.3d 488, 491 (7th Cir. 2005) (stating that, "[i]n determining the finality of an arbitration award, we consider whether 'the award itself, in the sense of judgment, order, bottom line, is incomplete in the sense of having left unresolved a portion of the parties' dispute'" (quoting *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 651 (7th Cir. 2001))).

Applying these decisions to the undisputed facts of this case, the date that the underlying arbitral award was "filed or delivered" under 9 U.S.C. § 12 is undoubtedly December 1, 2008, the date that the arbitration panel issued its "Final Award." To state the obvious, the arbitration panel's intention to resolve all claims on December 1, 2008 is made clear by the panel's decision to title the document as a "Final Award." Moreover, after the arbitration panel exhaustively discussed the parties' claims over the course of its 181-page decision, the arbitrators signed their names below the following passage: "This award is in full settlement of all claims and counterclaims presented in this Arbitration and is the unanimous decision of the Arbitrators." Like in *Tokura Construction*, the "Final Award" clearly manifests—in fact, expressly declares—the arbitration panel's intention to settle all claims on December 1, 2008 without conditioning such award on the future resolution of additional claims.

---

*Fradella*, 183 F.3d at 19.

More recently, in *Eastern Seaboard Construction Co., Inc. v. Gray Construction, Inc*. 553 F.3d 1 (1st Cir. 2008), the First Circuit explained that "[o]ur cases still tend to differentiate between a second award which is 'fundamentally inconsistent with the first award' and one which 'simply flesh[es] out the remedy announced initially." *Id.* at 4. Thus, the court found that Rule 47 of the AAA Construction Industry Arbitration Rules permitted the arbitrator to modify the initial omission of a $66,613.89 because doing so was "the type of 'clerical, typographical, technical or computational error[]' which AAA Rule 47 permitted him to amend or clarify. The amendment did not reopen the merits of the case. Rather, it clarified a latent ambiguity." *Id.* at 6.

The subsequent computational amendment that was issued on January 19, 2009, does nothing to cast doubt on the arbitration panel's intentions.  First, the "Order in Response to Requests for Modification of Final Award and Amendment of Final Award by Interlineation" plainly refers back to the "Final Award" issued December 1, 2008, and is not couched as a new, superseding final award.  In contrast to the 181-page "Final Award," the "Order in Response to Requests for Modification of Final Award and Amendment of Final Award by Interlineation" consisted of a comparably minuscule nine pages.  Thus, like the choice of law modification in *Fradella*, the amendment served only to supplement the final arbitral award, and therefore constitutes the resolution of a "subsidiary matter."  *Fradella*, 183 F.3d at 19.  Second, the computational amendment was uncontroversial, as the parties did not dispute that the "Final Award" should be modified.  Lastly, according to the arbitration panel, it could not have amended any substantive portion of the "Final Award" because it believed that it lacked jurisdiction to do so.  Thus, given that belief, the arbitration panel plainly did not intend to supersede the "Final Award" by making a computational amendment.

In the face of the published authority cited by Parsons, the unpublished case cited by Palmetto, *Savas v. UBS Financial Services, Inc*, No. 07-10220, 2007 WL 1768773 (E.D. Mich. 2007), is unpersuasive.  In *Savas*, the arbitration panel issued its decision on August 2, 2006.  Later, on August 31, 2006, the arbitration panel amended its first award to clarify the nature of the fees it had imposed and order that each party would bear its own respective costs and attorneys' fees.  The order was served on the plaintiff on September 5, 2006, and the defendant was not served with the motion to vacate until December 22, 2006.  The court did not make a legal determination as to the date the arbitration award was "filed or delivered" under 9 U.S.C. §

12, since the motion was untimely regardless of the date used. Thus, given this timeline, the court stated that "the latest *possible* date that Plaintiff could have satisfied the three-month statute of limitations period in § 12 of the FAA would have been December 4, 2006." *Id.* at *3 (emphasis added). Thus, the *Savas* case speaks strictly in hypothetical terms and does not establish any clear legal principle that can be applied in this case.

The Fourth Circuit has strongly intimated—but has stopped short of explicitly holding—that there are no equitable exceptions to the three-month limitations period set forth in the Federal Arbitration Act, 9 U.S.C. § 12. *See Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986) (holding that a party cannot attempt to vacate an arbitration award after the three-month window expired, and stating that "[t]he existence of any [equitable] exceptions to § 12 is questionable, for they are not implicit in the language of the statute, and cannot be described as common-law exceptions because there was no common-law analogue to enforcement of an arbitration award"). In any event, the parties have not argued that equitable exceptions should be applied in this case. Thus, having determined that the three-month limitations period was triggered by the issuance of the "Final Award" on December 1, 2008, the parties' motions to vacate and/or modify are untimely and both must be denied. This Court therefore does not reach the merits of the arguments contained in the parties' motions. Moreover, because neither party timely moved to vacate or modify the arbitral award, this Court is also required to grant Parsons's Petition and Motion for Order Confirming the Award.

Accordingly, this Court GRANTS Parsons's Petition and Motion for Order Confirming the Award (Paper No. 1), and DENIES Palmetto's Motion to Modify or Correct Arbitration Award (Paper No. 7) and Parsons's Motion to Vacate and Remand to Arbitration Panel (Paper

11

No. 13).

## II.     Cross Motions for Summary Judgment

The remaining two motions pending before this Court are cross motions for summary judgment, and both motions relate solely as to whether or not Parsons is entitled to costs and attorneys' fees under the Early Neutral Evaluation Agreement ("ENE Agreement"). The parties readily agree that there are no disputes of material fact, and consequently the cross motions are ripe for a legal determination by this Court. The cross motions present a singular legal issue for this Court to resolve: Whether post-award payments made by Palmetto to Parsons should be considered in determining whether, under the ENE Agreement, Palmetto obtained an arbitration award more favorable than the Evaluation Award. Because the contract between the parties does not provide that post-award payments should be considered, Palmetto obtained an arbitration award more favorable than the Evaluation Award. Consequently, the fee-shifting provision was not triggered, and Palmetto is not responsible for Parsons's costs and attorneys' fees.

Before beginning the mandatory arbitration process required by the subcontract agreement, and after failing to reach an agreement through informal mediation, Palmetto and Parsons agreed to participate in a somewhat novel form of alternative dispute resolution. The parties entered into an Early Neutral Evaluation Agreement ("ENE Agreement"), pursuant to which the parties agreed to have their claims heard *ex parte* by a "Neutral Evaluator" over a period not exceeding five days. (*See* Counterclaim Ex. A.) The ENE Agreement provided further that, after hearing each party's evidence,

> [t]he Neutral Evaluator shall produce an Initial Evaluation and a Final Evaluation which shall set forth the Neutral Evaluator's evaluation of the claims and defenses of each Party and shall state specifically the amount, if any, the Neutral Evaluator would award to each Party

12

> if tasked as the arbitrator on this dispute, the amount of the Final Evaluation to be termed the "Evaluation Award."

(*Id.* at ¶3.b.)  After the Evaluation Award was received by the parties, they each had fifteen days to accept or reject it.  (*Id.* at ¶5.b.)  If the Evaluation Award was rejected, the ENE Agreement also contained a fee-shifting provision that could be triggered after the claims were ultimately resolved at arbitration.  The ENE Agreement provided in relevant part as follows:

> If the final Arbitration Award . . . is not more favorable to a rejecting Party than the Evaluation Award, the rejecting Party shall pay to the other Party . . . actual costs incurred and expended with regard to this Agreement and the Arbitration, from the date of this Agreement to the date of the Arbitration Award.  The costs shall include but not be limited to attorneys' fees, expert/consultant fees, arbitrator costs, reporters' fees and arbitrator compensation . . . .  The amount to be paid shall be computed in accordance with paragraph d(i)(2) . . . .[6]

(*Id.* at ¶ 5.d.i.1.)  In other words, under the ENE Agreement, the rejecting party was responsible for the accepting party's litigation costs if the rejecting party ultimately received a less favorable ruling at arbitration.  Thus, the ENE Agreement incentivized the parties to accept a reasonable Evaluation Award.

At the ENE proceedings, Parsons claimed damages totaling $2,613,653.21, and Palmetto claimed damages totaling $70,419,962.55.  In the written Evaluation Award, the Neutral Evaluator determined a net award to Palmetto in the amount of $990,094.35.  Parsons accepted the award, but Palmetto rejected it, and the parties therefore proceeded to arbitration.

---

[6] The ENE Agreement apportioned costs on a sliding scale, "from 0% of the Costs to 100% of the Costs, in 10% increments, dependent on the percentage variance between the Final Evaluation and the Final Arbitration Award defined as the difference between the Final Evaluation and Final Arbitration Award, divided by the Final Arbitration Award (exclusive of attorney's fees and expenses and costs of the arbitration).  Each percentage point variance shall equal 10% of the Costs."  (*See* Counterclaim Ex. A., at ¶ 5.d.i.2.)

In the Final Award issued on December 1, 2008, as modified by the computational adjustment on January 19, 2009, the arbitral panel awarded Palmetto $1,139,568.25 on the claims and an additional $6,625.07 in costs and fees. Strictly by these award figures, Palmetto received a more favorable ruling from the arbitration panel than it did from the Neutral Evaluator. Thus, under the literal terms of the ENE Agreement and the award figures, Palmetto is not responsible for paying costs and attorneys' fees to Parsons, and Palmetto seeks summary judgment on this ground.

Parsons, however, has filed its own motion for summary judgment for costs and attorneys' fees under the ENE Agreement. Parsons argues that the Final Award in arbitration was actually less favorable to Palmetto than the Evaluation Award under the ENE Agreement after adjusting for post-Evaluation Award payments made to Parsons by Palmetto. Specifically, Parsons claims that Palmetto paid Parsons $175,009.55 for an outstanding contractual balance and for additional services after the Evaluation Award was issued but before the Final Award was issued. After subtracting that post-Evaluation Award payment from the Final Award of $1,139,568.25 and additional fees and costs of $6,625.07, the net recovery for Palmetto was $971,183.77, which is less than the $990,094.35 recommended (and rejected) in the Evaluation Award.

Parsons's argument is made by analogy to an offer of compromise. In *Mesa Forest Prods. v. St. Paul Mercury Ins. Co.*, 73 Cal. App. 4th 324 (Ct. App. 2d Dist. 1999), the primary case cited by Parsons in support of its position, the California Court of Appeals (an intermediate appellate court) addressed "whether, in determining if a plaintiff in a contract action has obtained a 'judgment' more favorable than an offer to compromise (Code Civ. Proc., § 998), the trial

14

court should take into account the defendant's postoffer payments on the debt." *Id.* at 327. Because the California legislature has promulgated a statute on offers to compromise, the court looked first to the statute's language. *Id.* at 331. Finding that "section 998 is completely silent on the question," the court turned its attention to the statute's purpose, finding that an offer of compromise must be reasonable under the circumstances.[7] Based on this interpretation of the statute, the court concluded that the defendant's postoffer payments on the debt were not reasonable.[8] *Id.* at 334-35. Parsons argues that, just like the California statutory provision at issue in *Mesa*, the purpose of the ENE Agreement is to encourage settlement and to penalize a party who fails to accept a reasonable offer. Therefore, because the facts of the two cases are similar, Parsons requests that this Court factor any post-Evaluation Award payments in determining whether the cost-shifting provision of the ENE Agreement was triggered.

This argument must be rejected. The *Mesa* case is one involving statutory interpretation, and this case is one involving contract interpretation. Thus, *Mesa* has very little persuasiveness

---

[7] The court explained as follows:

> To effectuate the purpose of the statute, a section 998 offer must be made in good faith to be valid . . . . Good faith requires that the pretrial offer of settlement be 'realistically reasonable under the circumstances of the particular case' . . . . The offer 'must carry with it some reasonable prospect of acceptance' . . . .One having no expectation that his or her offer will be accepted will not be allowed to benefit from a no-risk offer made for the sole purpose of later recovering [costs].

*Mesa Forest*, 73 Cal. App. 4th at 332 (citing *Jones v. Dumrichob,* 63 Cal. App. 4th 1258, 1262-1263 (Ct. App. 1st Dist. 1998).

[8] *See also Allen Farms, Inc. v. Broce Constr. Co.*, 134 P.3d 852, 856-57 (Okla. App. 2005) (finding that post-offer payments must be considered in determining whether judgment is more favorable than offer under an Oklahoma statutory provision, 12 O.S. § 1101.1(B)(1), (3)).

15

in resolving this contract dispute. Under Fourth Circuit case law,[9] "the court must first resort to the contract language to determine the intention of the parties . . . . If the language is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *FDIC v. Prince George Corp.*, 58 F.3d 1041, 1046 (4th Cir. 1995). "When construing a contract, the court's duty is to enforce the agreement of the parties, giving the language its usual meaning." *Id.*; *see also C.A.N. Enter., Inc. v. South Carolina Health and Human Serv. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988) ("When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense." (citing *Warner v. Weader*, 311 S.E.2d 78, 79 (S.C. 1983))). The language of the ENE Agreement is plain and unambiguous, and speaks strictly about a straight comparison between the "final Arbitration Award" (*i.e.* the "Final Award") and the "Evaluation Award": "If the final Arbitration Award . . . is not more favorable to a rejecting Party than the Evaluation Award, the rejecting Party shall pay to the other Party . . . actual costs incurred and expended with regard to this Agreement and the Arbitration, from the date of this Agreement to the date of the Arbitration Award." The contract does not mention post-offer payments. Applying these direct terms, the Final Award was more favorable to Palmetto than the Evaluation Award, and therefore Palmetto is not responsible for costs and attorneys' fees.

Even if the contractual language were not plain and unambiguous, however, Parsons's argument would still be rejected for an additional reason. Both parties modified their claims against each other in the period after the ENE Agreement was executed and prior to the issuance

---

[9] Parsons argues that South Carolina law applies, but acknowledges that "the law construing contracts . . . is, in our experience, standard across jurisdictions." (Parsons's Cross Mot. Summ. J. 8 n.6.)

of the Final Award. For example, Parsons added the $36,160 for work performed pursuant to SA 27 *after* the Evaluation Award was issued. Thus, as Palmetto has argued,

> because SA 27 was never considered as part of the ENE Evaluation, PBC's subsequent payment for that issue cannot properly be subtracted from the Arbitration Award to make a fair comparison of the two amounts. To include this amount, as PB asserts, would require the Court to double-count the SA 27 payment, because it is a part of the Arbitration Award, but not part of the ENE Final Evaluation.

(Palmetto's Reply 6.) Therefore, after excluding the $36,160 for work performed pursuant to SA 27, "[e]ven if the first payment by [Palmetto] of $138,849.55 is subtracted from the final Arbitration Award, the Award still is more favorable to [Palmetto] than the ENE Evaluation ($1,139,568.25 - $138,849.55 = $1,000,718.70, which is greater than the ENE Final Evaluation of $990,094.35)." (*Id.*)

Accordingly, this Court GRANTS Palmetto's Motion for Summary Judgment (Paper No. 30), and DENIES Parsons's Cross Motion for Summary Judgment (Paper No. 32).

## **CONCLUSION**

For the reasons stated, Parsons's Petition and Motion for Order Confirming the Award (Paper No. 1) is GRANTED, Palmetto's Motion to Modify or Correct Arbitration Award (Paper No. 7) is DENIED, Parsons's Motion to Vacate and Remand to Arbitration Panel (Paper No. 13) is DENIED, Palmetto's Motion for Summary Judgment (Paper No. 30) is GRANTED, and Parsons's Cross Motion for Summary Judgment (Paper No. 32) is DENIED. A separate Order follows.

Date: August 25, 2009                               /s/_____
                                                   Richard D. Bennett
                                                   United States District Judge